Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 6, 2004          Decided July 13, 2004

No. 03-5204

NATIONAL HOME EQUITY MORTGAGE ASSOCIATION,
APPELLANT

v.

OFFICE OF THRIFT SUPERVISION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv02506)

———

*Ronald W. Stevens* argued the cause for appellant. With him on the briefs were *David R. Overstreet* and *Christopher R. Nestor.*

*Thomas J. Segal*, Deputy Chief Counsel, Office of Thrift Supervision, argued the cause for appellees. With him on the brief was *Elizabeth R. Moore*, Special Counsel.

———

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Sarah Reznek* was on the brief for *amicus curiae* State Attorneys General in support of appellee.

*Cheryl L. Ziegler, Jonathan P. Hooks, Nina F. Simon*, and *Michael R. Schuster* were on the brief for *amici curiae* National Community Reinvestment Coalition, et al. in support of appellee.

Before: GINSBURG, *Chief Judge*, and HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The National Home Equity Mortgage Association seeks an order declaring invalid a final rule promulgated by the Office of Thrift Supervision pursuant to the Alternative Mortgage Transaction Parity Act, 12 U.S.C. §§ 3801 *et. seq*. The challenged rule designates certain OTS regulations as applicable and others as inapplicable to nonfederally chartered housing creditors that engage in "alternative mortgage transactions." The district court granted summary judgment in favor of the OTS, 271 F. Supp. 2d 264 (D.D.C. 2003), and the NHEMA appeals. We conclude the OTS did not exceed its statutory authority in promulgating the rule and hence we affirm the judgment of the district court.

## I. Background

The NHEMA is a trade association of non-prime mortgage lenders, here representing state chartered housing creditors, including both non-depository lenders and depository institutions other than commercial banks and credit unions. The Association petitions for review of a final rule in which the OTS designated certain of its regulations as applicable and others as inapplicable to nonfederally chartered creditors that engage in "alternative mortgage transactions" (AMTs). *See* 67 Fed. Reg. 60,542 (Sept. 26, 2002). An AMT is a mortgage loan for which the term or interest rate or both are adjustable rather than fixed. *See* 12 U.S.C. § 3802(1).

The Congress passed the Parity Act in 1982 in order to "eliminate the discriminatory impact that [regulations authorizing federally chartered depository institutions to engage in

alternative mortgage financing] have upon nonfederally chartered housing creditors," and to provide for parity between the two types of lenders "by authorizing all housing creditors to make, purchase, and enforce alternative mortgage transactions so long as the transactions are in conformity with" federal regulations. *Id.* § 3801(b). Section 804(c) of the Act provides:

> An alternative mortgage transaction may be made by a housing creditor in accordance with this section notwithstanding any State constitution, law, or regulation.

*Id.* § 3803(c). The Act also authorized the OTS, the Office of the Comptroller of the Currency, and the National Credit Union Administration to

> identify, describe, and publish those portions or provisions of their respective regulations that are inappropriate for (and thus inapplicable to), or that need to be conformed for the use of, nonfederally chartered housing creditors.

Pub. L. 97–320, § 807(b), *reprinted in* 12 U.S.C. § 3801 note. Pursuant to this authority, in 1983 the Federal Home Loan Bank Board (OTS's predecessor) promulgated a final rule in which it identified certain of its regulations, including those that describe and define AMTs, as applicable to nonfederally chartered creditors. 48 Fed. Reg. 23,032, 23,053 (May 23, 1983). The Bank Board understood its role as making applicable to state chartered housing creditors only those regulations that were "an integral part of, and particular to" AMTs entered into by federally chartered housing creditors, and not those regulations that governed all types of mortgage loans. *Id.*

This regulatory scheme remained substantially unchanged until 1996, when the OTS added to the list of regulations applicable to nonfederally chartered creditors those governing late fees and prepayment penalties. The former allows federal thrifts to include a late fee provision in their loan contracts, subject to certain limitations upon the collection and application of such fees. 12 C.F.R. § 560.33. The latter

permits federal thrifts to impose a fee for prepayments and specifies how such payments shall be applied to the balance of the loan. *Id.* § 560.34. As a result of this change, state chartered housing creditors could levy prepayment penalties and late fees without regard to state laws limiting or prohibiting such charges.

Within a few years of this change the OTS became aware that the application of its late fee and prepayment penalty regulations to housing creditors might be contributing to predatory lending practices in the subprime mortgage market. In April 2000 the OTS issued an Advance Notice of Proposed Rulemaking in which it aired that concern. *See* 65 Fed. Reg. 17,811, 17,813 (Apr. 5, 2000). Although the agency recognized that subprime lending helps borrowers who would not otherwise qualify for a mortgage loan, it wanted to discourage rather than to enable predatory practices. *Id.* at 17,814/2. To that end, the agency sought public comments regarding, among other things, the extent to which housing creditors were "engaging in predatory or abusive mortgage lending practices that would be contrary to existing state law but for the provisions of the Parity Act and OTS's implementation thereof." *Id.* at 17,816/2.

The OTS next issued a Notice of Proposed Rulemaking that would make the late fee and prepayment penalty regulations inapplicable to state chartered housing creditors. In the NPR, the agency noted the rising incidence of potentially predatory lending practices and preliminarily found the two regulations at issue were not "essential or intrinsic" to a creditor's ability to engage in AMTs. *See* 67 Fed. Reg. 20,468, 20,471 (Apr. 25, 2002). In contrast, the OTS proposed to continue applying to state chartered housing creditors its rules regarding adjustments and disclosures to borrowers entering into AMTs. *Id.*

Pursuant to its authority under § 807(b), the OTS then promulgated a final rule making its prepayment penalty and late fee regulations inapplicable to state chartered housing creditors, *see* 67 Fed. Reg. 60,542–55, on the ground that those regulations are "not essential or intrinsic" to a lender's

ability to engage in AMTs. *Id.* at 60,544. As a result, state chartered housing creditors again have to comply with state laws governing prepayment penalties and late fees, rather than with the relevant OTS regulations.

The NHEMA challenged the final rule in district court, arguing (1) the OTS lacks authority to designate which of its regulations shall apply to state housing creditors because the Parity Act preempts all state laws governing AMTs; and (2) the rule is arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because there is insufficient evidence in the record to support either the agency's conclusion that the regulations at issue are "not essential or intrinsic" to a creditor's ability to engage in AMTs, or the factual premise of the rule, that state chartered housing creditors were abusing their authority to charge prepayment penalties and late fees.

Upon cross-motions for summary judgment, the district court concluded the Parity Act is ambiguous with regard to the scope of state law preempted. 271 F. Supp. 2d at 270–71. The court then concluded the agency's interpretation of the extent to which the Act preempts state law is based upon a permissible construction of the statute and is therefore entitled to deference. *Id.* at 273. Finally, the district court rejected the NHEMA's argument that the rule is arbitrary and capricious for want of factual support in the rulemaking record. *Id.* at 276–78.

## II. Analysis

On appeal the NHEMA renews only its argument that the agency's rule is based upon an impermissible interpretation of the Parity Act. We review the OTS's interpretation of a statute it is charged with administering according to the familiar two-step analysis in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, we must first determine "whether Congress has directly spoken to the precise question at issue," *id.* at 842, here, whether the Parity Act requires that state chartered housing creditors be made subject to all federal regulations

respecting AMTs or, rather, only those regulations reasonably identified by the OTS as not "inappropriate for (and thus inapplicable to)" state chartered housing creditors. If the Congress has so spoken, then "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," then we must go on to determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

At *Chevron* step one the NHEMA emphasizes that, pursuant to § 804(a) of the Parity Act, nonfederally chartered housing creditors may engage in AMTs that are "made in accordance with regulations governing alternative mortgage transactions as issued by the [OTS] *for federally chartered savings and loan associations*." 12 U.S.C. § 3803(a) (appellant's emphasis). The NHEMA contends that this provision, when read in conjunction with § 804(c) (preempting state law with respect to AMTs made in accordance with § 804), *id.* § 3803(c), unambiguously establishes that nonfederally chartered housing creditors shall be able to engage in AMTs upon all the same terms as federally chartered housing creditors, and that the Act thus preempts all state laws respecting AMTs. The NHEMA draws further support for its interpretation from § 802 of the Parity Act, in which the Congress stated the purpose of the Act is to "provide [nonfederally chartered housing creditors] parity with federally chartered institutions." *Id.* § 3801(b). "Thus," we are told, "the scope of preemption created by the Parity Act is that necessary to create parity: not more, not less."

It is not so clear to us the Parity Act is intended to preempt all state laws applicable to AMTs. The Act also provides that § 804, which authorizes state chartered housing creditors to engage in AMTs, "shall apply . . . only to transactions made in accordance with regulations governing alternative mortgage transactions as issued by the [OTS]." The Congress did not, however, simply make all OTS regulations applicable to nonfederally chartered housing creditors engaging in AMTs; to the contrary, the legislature specifically

directed the agency to "identify, describe, and publish those portions of [its] regulations that are inappropriate for (and thus inapplicable to)" such creditors. Pub. L. 97–320, § 807(b). The Congress neither defined "inappropriate" nor provided any further guidance to the OTS. In light of this consequently broad mandate, the Act need not be construed, as the NHEMA argues, as an unequivocal direction to make applicable to state chartered housing creditors all OTS regulations governing federally chartered housing creditors engaging in AMTs, and thus to preempt all state laws and regulations inconsistent therewith. The agency must decide which regulations are appropriate and which are inappropriate for nonfederally chartered housing creditors in view of the purposes of the Parity Act and of such other regulatory policies as the OTS may lawfully pursue.

Because the Parity Act does not unambiguously express an intent to preempt all state laws governing AMTs, we must go on to *Chevron* step two and consider whether the agency's interpretation of the Act is a permissible one. We hold it is.

As the OTS interprets the Parity Act, the agency is required to apply to state chartered housing creditors only those core regulations that "authorize" federally chartered housing creditors to "engage in" AMTs, as opposed to those less central regulations that govern the terms upon which federally chartered creditors may do so; only state laws in conflict with such authorizing provisions are preempted. In the final rule, the OTS defined the applicable regulations as those that are "essential or intrinsic to the ability of state housing creditors to continue to provide alternative mortgage transactions."

As we have seen, although the Parity Act on its face makes clear the Congress intended to preempt state law to some extent, the Act also clearly vested the OTS with authority to "identify those portions" of its regulations that are "inappropriate for" application to nonfederally chartered creditors. The statute thus clearly admits of the agency's interpretation that the Congress did not mandate parity between federally and nonfederally chartered creditors with respect to every

detail of AMTs, and that the purpose of the Act is served — and the agency's responsibility thereunder is discharged — if the OTS makes applicable to state creditors only those regulations "essential or intrinsic to the[ir] ability" to engage in AMTs.

The NHEMA also argues we owe no deference to the OTS's interpretation of the Act because it is a departure from previous agency policy. An agency's interpretation of a statute is entitled to no less deference, however, simply because it has changed over time. "On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron*, 467 U.S. at 863–64. To be sure, an agency must provide a "reasoned analysis" for its change in course, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983), but the OTS has clearly done that. As early as the April 2000 ANPR the OTS expressed concern that state housing creditors were engaging in predatory subprime lending — a concern it ultimately determined to be well-founded. Moreover, the agency's change in course is simply a return to the view it held consistently from its first implementation of the Parity Act in 1983 until 1996. *Cf. Power Reactor Develop. Co. v. Int'l Union of Electricians*, 367 U.S. 396, 408 (1961) (agency interpretation entitled to greater deference when adopted soon after passage of statute). The OTS reverted to this view in response to what it reasonably perceived as the unanticipated and undesirable fallout from the change it made in 1996. *See Florida Cellular Mobile Communications Corp. v. FCC*, 28 F.3d 191, 196–97 (D.C. Cir. 1994) (upholding change in regulation as reasoned response to experience).

In sum, because we conclude the agency's interpretation of the Parity Act and its rulemaking authority thereunder is a permissible one, we defer to that interpretation pursuant to *Chevron* step two.

The NHEMA argued in the district court that the OTS rule is arbitrary and capricious, in violation of the Administrative

Procedure Act, 5 U.S.C. § 706(2)(A), because there is no evidence in the administrative record demonstrating that (1) late payment and prepayment fees are "not essential or intrinsic" to state housing creditors' ability to engage in AMTs; or that (2) state housing creditors' abuse of late payment and prepayment provisions resulted in an increase in predatory lending. The NHEMA does not, however, raise this argument on appeal — no doubt because 46 state Attorneys General had submitted evidence supporting the findings of fact upon which the OTS based its decision to make its prepayment and late fee regulations inapplicable to state chartered housing creditors, which evidence the Attorneys General reiterate in their brief as *amici curiae* in support of the OTS. In response to the agency's ANPR, the Attorneys General reported that, in their experience, the regulatory change made in 1996 encouraged abusive practices "primarily by non-depository lenders and mortgage brokers," that is, state chartered housing creditors subject to little, if any federal regulation. Letter from Nat'l Ass'n of Attorneys General in Response to ANPR, at 1–3. Concerned particularly with prepayment penalties and late fees, the Attorneys General "strongly urge[d] the OTS to take appropriate action to revise its regulations" in order "to protect borrowers from predatory practices." *Id.* at 3. In view of the Attorneys General's responsibility for enforcing state consumer protection laws, the OTS could reasonably have given special weight to their informed judgment about the effect of the agency's 1996 change of policy. Because the NHEMA does not press its APA argument on appeal, however, we hold only that the OTS's interpretation of the Parity Act is a reasonable one.*

---

* In the district court the NHEMA also argued the OTS's interpretation is not entitled to deference because more than one agency has authority to administer and hence to interpret the Parity Act. *See* 271 F. Supp. 2d at 274. Because that issue is not presented on appeal, we do not decide it either.

### III.   Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*