# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 21, 2006         Decided August 1, 2006

No. 05-5218

ALABAMA EDUCATION ASSOCIATION, ET AL.,
APPELLEES

v.

ELAINE L. CHAO, IN HER OFFICIAL CAPACITY AS SECRETARY
OF THE UNITED STATES DEPARTMENT OF LABOR,
APPELLANT

---

Consolidated with
05-5220

---

Appeals from the United States District Court
for the District of Columbia
(No. 03cv00253)
(No. 03cv00682)

---

*Stephanie R. Marcus*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Peter D. Keisler*, Assistant Attorney General, *Gregory G. Katsas*, Deputy Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Michael J. Singer*, Attorney, and *Mark S. Flynn*, Counsel, U.S. Department of Labor. *Michael J. Ryan, Oliver W. McDaniel*, and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

*Nathan Paul Mehrens* was on the brief for *amici curiae* Stop Union Political Abuse, Inc. and U.S. Union Watch, Inc. in support of appellant at the time the brief was filed. *Roger Clegg* entered an appearance.

*Andrew D. Roth* argued the cause for appellees Alabama Education Association, et al. With him on the brief were *Laurence Gold*, and *Robert H. Chanin*.

*David J. Strom* and *Teresa J. Idris* were on the brief for appellees Delaware Federation of Teachers, et al.

Before: GINSBURG, *Chief Judge*, and ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Secretary of Labor appeals the decision of the district court granting summary judgment in favor of the Alabama Education Association, the Delaware Federation of Teachers, and 37 like organizations representing public sector employees, primarily public school teachers. After holding fast to one reading of § 3(j)(5) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 402(j)(5), for more than 40 years, the Department reconsidered and adopted an alternative interpretation under which wholly public sector labor organizations for the first time could be subject to the financial reporting requirement of the Act.

Applying the familiar two-step analysis in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), we conclude the district court erred in holding the Department's new interpretation was inconsistent with the Act. Because reasonable readings of § 3(j)(5) are advanced by each of the

parties, we cannot say the "Congress had an intention on the precise question at issue," *Chevron*, 467 U.S. at 843 n.9; nor can we say the Department's revised reading of § 3(j)(5) is not a "permissible" one, *id.* at 843. We order the matter remanded to the agency nonetheless because "the Department did not provide a reasoned explanation for its new policy." *AFL-CIO. v. Brock,* 835 F.2d 912, 913 (D.C. Cir 1987).

## I. Background

The Congress enacted the LMRDA, 29 U.S.C. § 401 *et seq.*, in order to "eliminate or prevent improper practices on the part of labor organizations." *Id.* § 401(c). To that end, the Act requires "[e]very labor organization" annually to provide the Department with information "in such detail as may be necessary accurately to disclose [its] financial condition and operations." *Id.* § 431(b); *see* 29 C.F.R. Part 403 (describing the required annual reports).

## A. "Labor Organizations" under the LMRDA

Two interrelated provisions establish the criteria upon which an entity is deemed a "labor organization" subject to the disclosure requirements of the Act. Subsection 3(i), 29 U.S.C. § 402(i), states:

> "Labor organization" means a labor organization engaged in an industry affecting commerce and includes [1] any organization of any kind ... so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances [etc.] and [2] any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

The definition and two examples set forth in § 3(i) are supplemented by § 3(j), 29 U.S.C. § 402(j), which provides:

A labor organization shall be deemed to be engaged in an industry affecting commerce if it--

(1) is the certified representative of employees under the provisions of the National Labor Relations Act ... or the Railway Labor Act ...; or

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the

preceding paragraphs [(1)-(4)] of this subsection, other than a State or local central body.

As the quoted text makes clear, the term "labor organization" is implicitly limited by the terms "employer" and "employee." As defined in § 3(e), the term "employer" does not include "any State or political subdivision thereof." 29 U.S.C. § 402(e). The term "employee," as used in §§ 3(i) and (j), includes only "individual[s] employed by an employer," *id.* § 402(f), that is, employees in the private sector. Although the terms "employer" and "employee" appear in both §§ 3(i) and (j), neither appears in the second illustrative clause of § 3(i) or in § 3(j)(5).

Since 1963 the Department has held, with respect to the first clause of § 3(i), that a "labor organization composed entirely of employees of ... governmental entities excluded by section 3(e) [is not] a labor organization for purposes of the Act." 29 C.F.R. § 451.3(a)(4). With respect to the second clause of § 3(i), however, the Department has made clear that, "[r]egardless of whether it deals with employers [or] is composed of employees, any conference, general committee, joint or system board, or joint council engaged in an industry affecting commerce and which is subordinate to a national or international labor organization is a 'labor organization' for purposes of the Act." 29 C.F.R. § 451.3(b); 28 Fed. Reg. 14,388, 14,388 (Dec. 27, 1963).

B. The Rulemaking

In December 2002 the Department proposed to adopt a rule expanding the range of organizations subject to the annual reporting requirement of the LMRDA. *Labor Org. Annual Fin. Reports*, 67 Fed. Reg. 79,280 (Dec. 27, 2002) (notice of proposed rulemaking (NPRM)). Until then, the Department

had read the final clause of § 3(j)(5) ("which includes a labor organization engaged in an industry affecting commerce within the meaning of [§§ 3(j)(1)-(4)]") (hereinafter the "which includes ..." clause), as modifying the phrase "conference, general committee, joint or system board, or joint council." Under that reading, a "conference," etc., even if "subordinate to a national or international labor organization," was not subject to the LMRDA unless it represented private sector "employees" in a manner defined in any one of the four paragraphs at §§ 3(j)(1)-(4). In other words, any labor organization composed solely of public employees had no statutory "employees," was not a "labor organization" subject to the Act, and therefore did not have to file annual financial reports with the Department of Labor.

In 2002, however, the Department proposed to amend the instructions for annual reporting to state that "'any conference, general committee, joint or system board, or joint council' that is subordinate to a national or international labor organization will be required to file an annual report." 67 Fed. Reg. at 79,284. Underlying this change was the Department's proposal to read the "which includes ..." clause of § 3(j)(5) as modifying the phrase immediately preceding it -- "subordinate to a national or international labor organization." That reading of § 3(j)(5) makes a "conference" et al. with solely public sector members subject to the LMRDA if the conference is subordinate to a "national or international labor organization" that is subject to the Act.

The Department explained it was amending its filing requirements in part to adopt the holding of the Ninth Circuit in *Chao v. Bremerton Metal Trades Council, AFL-CIO,* 294 F.3d 1114 (2002), a suit the Department brought under the LMRDA on behalf of a federal employee alleging the Bremerton Council had not followed certain election

procedures prescribed by the Act. Although the Council had both private and public sector members, it argued it was not a "labor organization" under § 3(i) because it did not "bargain with any non-federal employers." *Id.* at 1117. In resolving the issue under § 3(j)(5), the court stated: "We must decide not whether the Bremerton Council bargains directly with any private employers but, instead, whether the Metal Trades Department, the organization to which the Bremerton Council is subordinate, is engaged in an industry affecting commerce." *Id.* Because the Metal Trades Department was so engaged and was a "labor organization" under the LMRDA, the court concluded the Bremerton Council, as a subordinate body, was also subject to the Act. *Id.* at 1118.

Prefacing its revised reading of § 3(j)(5) and related disclosure proposals in the NPRM, the Department stated:

> Labor organizations also have changed tremendously since the enactment of the LMRDA in 1959. There are now far fewer small, independent unions and more large unions affiliated with a national or international body .... In fact, many large unions today resemble modern corporations in their structure, scope and complexity .... Moreover, just as in the corporate sector, there have been a number of financial failures and irregularities involving pension funds and other member accounts maintained by labor organizations. These failures and irregularities result in direct financial harm to union members. If the members of labor organizations had more complete, understandable information about their unions' financial transactions, investments and solvency, they would be in a much better position than they are today to protect their personal financial interests and exercise their democratic rights of self-governance.

67 Fed. Reg. at 79,280-81.

After issuing the NPRM, the Department alerted certain organizations they might be newly required to file annual reports. Among the organizations notified were the appellee state education associations (SEAs) and state federations of teachers (SFTs).

By their own account, each of the SEAs now before us is "composed entirely of individual [public] employees who hold direct membership," and whom the "SEA represents ... in dealing with their employers" concerning grievances, wages, hours, and other conditions of employment. Each SEA is affiliated with the National Education Association (NEA), which, because it has private as well as public sector members, is subject to the LMRDA.

The SFTs describe themselves as "intermediate state level union organizations that have only public sector members." Like the SEAs, they "do not 'deal with' private sector employers." The SFTs, however, are affiliated with the American Federation of Teachers, which is in turn a member of the American Federation of Labor and Congress of Industrial Organizations; both the AFT and the AFL-CIO are national or international "labor organizations" subject to the Act. Because, under the Department's proposed interpretation of § 3(j)(5), the SEAs and SFTs may be deemed "subordinate to" a "labor organization" and therefore subject to the LMRDA, each group brought an action in the district court seeking to enjoin the Department from promulgating and enforcing its revised reading of § 3(j)(5).

While those suits were pending in the district court, the Department adopted the proposed rule. *See Labor Org. Annual*

*Fin. Reports*, 68 Fed. Reg. 58,374 (Oct. 9, 2003) (Final Rule). In so doing the Department considered comments submitted by the NEA, the AFL-CIO, and others. Although the Department recognized its revised interpretation of § 3(j)(5) "represent[ed] a departure from previous court decisions and the Department's prior administration of the Act," it nonetheless maintained its new approach, along with that taken by the court in *Bremerton*, was "the correct reading of the statutory language." 68 Fed. Reg. at 58,384. The Department acknowledged that the Congress intended "to exempt 'wholly public sector' labor organizations from the coverage of the Act," *see* 29 C.F.R. § 451.3(a)(4), but stated: "The *Bremerton* court found that an intermediate labor organization is not 'wholly public sector' and exempt from the Act where it is subordinate to a parent organization that meets the definition of a labor organization engaged in an industry affecting commerce." 68 Fed. Reg. at 58,384.

Thereafter the district court consolidated the appellees' two pending suits, granted summary judgment for the SEAs and SFTs, and enjoined the Department from enforcing the new rule. *See Ala. Educ. Ass'n v. Chao*, Nos. Civ. A. 03-0253, 03-0682, 2005 WL 736535 (D.D.C. Mar. 31, 2005). Applying *Chevron* step one, the district court held the Department's new interpretation of § 3(j)(5) was "contrary to the plain meaning of the statute, its legislative history, and the congressional purpose behind the law." *Id.* at *9. In addition, it held the Department's reliance upon *Bremerton* was misplaced because that decision "was too limited in its analysis to constitute persuasive precedent." *Id.* Having rejected the Department's revised reading of § 3(j)(5), the district court did not reach, among other things, what it means to be "subordinate to a national or international labor organization" and whether the plaintiff SEAs and SFTs were in fact so subordinate.

10

## II. Analysis

On appeal the Department contends its revised reading of the LMRDA is entitled to deference under *Chevron* because § 3(j)(5) is, at the very least, ambiguous and its current interpretation of that provision is supported by a reasoned analysis. The SEAs argue *Chevron* is inapplicable because the Department has no authority under the Act to "interpret" any subsection of § 3, and both the SEAs and the SFTs disagree with the Department on the merits of its new interpretation of § 3(j)(5).

Under the two-step analysis of *Chevron*, we determine first "whether Congress has directly spoken to the precise question at issue," 467 U.S. at 842 -- here whether an organization that does not represent statutory "employees" or deal with statutory "employers" may be subject to the LMRDA. "[I]f the statute is silent or ambiguous" on that question, then we must defer to the agency's interpretation -- here the Department's reading of § 3(j)(5) -- so long as it is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. When an agency adopts a materially changed interpretation of a statute, it must in addition provide a "reasoned analysis" supporting its decision to revise its interpretation. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983).

Not every agency interpretation of a statute is appropriately analyzed under *Chevron*. That analysis is applicable only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

A.  Applicability of *Chevron*

Although the SEAs and SFTs prevailed when the district court reviewed the Department's rulemaking under *Chevron*, on appeal the SEAs (alone) argue the Department had no authority to "interpret" § 3(j)(5) because the "Congress definitively established the scope of the LMRDA's coverage by expressly defining the term 'labor organization' as used in the Act."  Therefore, the SEAs urge, the Department's rulemaking was "beyond the *Chevron* pale," *Mead*, 533 U.S. at 234, and hence entitled only to "respect proportional to its 'power to persuade,'" *id.* at 235 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)).

The Department maintains the Congress expressly delegated to it authority to resolve ambiguities in the Act, including any in § 3.  Specifically, the Department adverts to § 208 of the LMRDA, 29 U.S.C. § 438, which provides:

> The Secretary shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under this subchapter and such other reasonable rules and regulations ... as he may find necessary to prevent the circumvention or evasion of such reporting requirements.

According to the Department, it is authorized to delineate the boundaries of the phrase "labor organization ... engaged in an industry affecting commerce" in § 3(j)(5) precisely because doing so is "necessary to prevent the circumvention ... of [the] reporting requirements" of the Act.  The Department also maintains that because the Congress authorized it to bring civil actions "as may be appropriate" to enforce the Act, 29 U.S.C. § 440, the Department may interpret § 3(j)(5) and other provisions relevant to determining whether to bring a civil

action. Relatedly, the Department contends *Mead* is inapposite because "the Secretary has the knowledge, judgment and expertise necessary ... to resolve ambiguities and fill in gaps in the statute." *Cf. Gonzales v. Oregon*, 126 S.Ct. 904, 914-16 (2006) (no delegation of authority to Secretary of Health and Human Services in Controlled Substances Act to make decisions requiring medical expertise); *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005) (no delegation of authority to FTC in Gramm-Leach-Bliley Act to regulate the legal profession).

We agree with the Department that its interpretation of § 3(j)(5) is reviewable under *Chevron*. That interpretation clarifies the meaning of "labor organization ... engaged in an industry affecting commerce" and therefore comes within its express authority in § 208 to promulgate rules "prevent[ing] the circumvention or evasion of [the statutory] reporting requirements." If the new reading reaches a "labor organization engaged in an industry affecting commerce" that until now had avoided disclosure under the LMRDA, that only underscores the validity of the Department's claim of authority to issue its interpretive regulation. *See AFL-CIO v. Chao*, 409 F.3d 377, 385-86 (D.C. Cir. 2005) (upholding reporting regulation issued per § 208 because, in construing § 201(b), "Secretary could reasonably conclude that '[p]roviding additional detail ... is necessary to give union members an accurate picture of their labor organization's financial condition and operations'").

B. *Chevron* Step One

At *Chevron* step one, the Department contends § 3(j)(5) is "ambiguous on its face" because the "which includes ..." clause can be read to modify either the first or the second phrase of paragraph (5). Further, the Department claims its new reading

of the statute is the more consistent with applicable rules of grammar and relevant interpretive canons.

The Department invokes the "grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase ... should be read as modifying only the noun or phrase that it immediately follows." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 343 (2005) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)); *see also* 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). The last antecedent before the "which includes ..." clause is, of course, "national or international labor organization."

The SEAs and SFTs insist § 3(j)(5) is unambiguous and fully consistent only with the Department's prior interpretation. They contend first that the "rule of the last antecedent ... applies only to a limiting clause or phrase that immediately follows a noun or phrase without any off-setting punctuation." *See* 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 373 & n.5 (6th rev. ed. 2000). Here, of course, the "which includes ..." clause is set off from the preceding phrase by a comma.

They also maintain that "each of the two clauses set off by commas [must] be treated as stating an independent defining characteristic of [the] Second Clause of § 3(i) [that is,] 'conference, general committee, joint or system board, or joint council.'" For this they rely upon *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), in which the Supreme Court determined that the second clause in the last part of § 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b), is independent because, among other things, it "is set aside by

commas." 489 U.S. at 241. Section 506(b) states in part: "[T]here shall be allowed to the holder of [a secured] claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Because "interest on [a secured] claim" is an independent clause, the Supreme Court held a secured creditor is entitled to "interest" even if interest is not provided "under the [security] agreement." *Ron Pair*, 489 U.S. at 241-42. In this case, the SEAs and SFTs reason that for an entity to become subject to the LMRDA by means of § 3(j)(5), regardless whether it is "subordinate to" another organization, it must itself be deemed engaged in commerce under one of the preceding paragraphs, §§ 3(j)(1)-(4).

The Department counters that "the placement of commas" in § 3(j)(5) is of no moment. Indeed, the Department contends that in *Ron Pair* itself "[t]he position of the commas was ... less significant to the Court's interpretation than the separation of the phrase "'interest on such claim' ... from the reference to fees, costs, and charges by the conjunctive words 'and any.'" *Ron Pair*, 489 U.S. at 241. The "which includes ..." clause in § 3(j)(5) has no conjunctive or other term indicating which of the two preceding phrases it modifies. Therein, says the Department, lies the inherent ambiguity of the provision.[*]

---

*Both sides invoke the legislative history of the LMRDA. The Department relies upon Senator Goldwater's statement regarding the importance of ensuring intermediate labor bodies are covered under the LMRDA in order to prevent "corrupt and racket infested unions [from] continu[ing] to prey upon honest and decent dues-paying union members." 105 Cong. 6516, 86th Cong. 1st Sess. (Apr. 23, 1959). The SEAs and SFTs also look to Senator Goldwater, as well as several other senators, in support of their position that the Congress manifestly intended to exclude from the ambit of the Act labor organizations having solely public sector members. In protest of the initial version of the bill, Senator Goldwater co-authored with Senator

In our view, nothing in § 3, including the definition of "labor organization" in § 3(i), forecloses the possibility that a body without private sector members may be subject to the LMRDA if it is subordinate to or part of a larger organization that does have private sector members. As noted above, neither "employer" nor "employee" appear in the second part of § 3(i) or in § 3(j)(5). With respect to § 3(j)(5), each side advances a permissible interpretation. We find in the plain text of that provision and the relevant subparts of § 3 no guidance as to which of the first two phrases of § 3(j)(5) the Congress intended the "which includes ..." clause to modify. Although the Department is correct that the Supreme Court's decisions in *Jama* and *Barnhart* support application of the "rule of the last antecedent," the SEAs and SFTs are also correct that the reading they advance is consistent with the Supreme Court's approach in *Ron Pair*. In sum, if the "Congress had an intention on the precise question at issue," *Chevron,* 467 U.S. at 843 n.9, then we would not find such a patent ambiguity on the face of § 3(j)(5). Accordingly, we proceed to

---

Dirksen a Minority Report that stated: "As the bill now reads labor unions whose membership consists of Government employees and whose employers are governmental bodies or agencies of any kind ... are subject to all requirements, restrictions, and limitations of the bill." S. Rep. No. 187, reprinted in U.S. Dept. of Labor, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 199 (1959). The bill was then amended to include the first clause of § 3(i). The SEAs and SFTs argue the purpose of the amendment was to ensure that no wholly public sector organization would be covered by the Act. The Department argues that had the Congress truly intended such a result, it would have omitted or altered the second clause of § 3(i), which, as noted above, makes no mention of statutory "employers" or "employees." We find the parties' references to legislative history unpersuasive. If anything, the inconsistent statements above merely confirm the inherent ambiguity of the statute.

C. *Chevron* Step Two

Having arrived at *Chevron* step two, the Department argues its revised interpretation is "permissible" and supported by a "reasoned analysis." In both the NPRM and the Final Rule the Department stated that it was adopting the Ninth Circuit's reading of § 3(j)(5) in *Bremerton* "because that interpretation gives full meaning to the plain language of the statute." 67 Fed. Reg. at 79,284. That is, the Department believes *Bremerton* is consistent with the notion that the Act does not extend to "wholly public" organizations: If an intermediate body is subordinate to a "labor organization," as defined by the Act to mean an organization that represents private sector employees, then that intermediate body is itself not "wholly public." *See* 68 Fed. Reg. at 58,384.

Second, insofar as its revised interpretation may draw the SEAs and SFTs into the ambit of the LMRDA, the Department sees that as good policy: "Given the growing complexity of union finances, as documented in the rule-making record," the idea that § 3(j)(5) "covers these types of intermediate labor bodies is particularly well-founded." As further evidence that it acted upon the basis of a "reasoned analysis," the Department points to the notice-and-comment rulemaking, in which it claims to have addressed fully the objections lodged by the NEA, the AFT, the AFL-CIO, and the "one individual union member" who supported their position. *See* 68 Fed. Reg. at 58,383-84.

The SEAs and SFTs, which reject the foregoing arguments in their entirety, contend the Department's reliance upon *Bremerton* is misplaced. In particular, the SEAs and SFTs argue "the *Bremerton* court's conclusion that the [Council] was covered by the LMRDA solely by virtue of its subordination to an LMRDA-covered national organization was not at all

necessary to the correct disposition of that case, much less a considered resolution of the issue." Because the Ninth Circuit acknowledged the Bremerton Council had private sector members, which was alone sufficient to bring the Council within the definition of a "labor organization" under § 3(i), the SEAs and SFTs contend the passage in *Bremerton* upon which the Department purportedly based its rulemaking was a dictum. They imply the Department's reliance upon that decision was particularly ill-considered because "[l]ong-standing case law also supports the conclusion that wholly public sector unions are not covered by the LMRDA." *See, e.g.*, *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A labor organization composed entirely of public sector employees is not a labor organization for purposes of the LMRDA").

The Department replies that it properly relied upon *Bremerton* because, "[i]n holding that the [Council] was covered under the LMRDA, the Ninth Circuit ... relied solely on the fact that the [Council] was subordinate to a parent organization that met the LMRDA definition of 'labor organization.'" As for the "[l]ongstanding case law" to which the SEAs and SFTs refer, the Department correctly points out that those decisions either construe only the first clause of § 3(i) or merely defer to the Department's prior interpretation of the LMRDA.

We think the SEAs and the SFTs well may have the better reading of the statute -- but that is a close question and one we need not decide. For we are obliged "to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2699 (2005). As we noted above, the Department's position that the "which includes ..." clause modifies the phrase immediately preceding it is, from a

purely grammatical standpoint, by no means an impermissible one. And we have made clear that "[a]n agency's interpretation of a statute is entitled to no less deference ... simply because it has changed over time." *Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1360 (D.C. Cir. 2004). Rather, the question raised by the change is whether the Department has supported its new reading of § 3(j)(5) with a "reasoned analysis" sufficient to command our deference under *Chevron*.

This the Department has failed to do. In the NPRM the Department reported that much has changed during the last 40 years in terms of the size, financing, and structure of labor organizations. Although the Department noted that "[t]here are now far fewer small, independent unions and more large unions affiliated with a national or international body," some of which experienced "financial failures and irregularities," 67 Fed. Reg. at 79,280, the Department never linked these facts to the purported concern with the transparency necessary to deter circumvention of reporting requirements. Nor did the Department offer examples, or even hypotheticals, to show that its prior interpretation was deficient. *Cf. AFL-CIO*, 409 F.3d at 387-88 (proposed rule "illustrated the need for additional reporting ... by pointing to examples in which union members could not obtain detailed, reliable information on [the] financial operations" of labor-related trust funds).

In responding to comments submitted by the NEA and the AFL-CIO, the Department relied upon the Ninth Circuit's decision in *Bremerton*, but did not acknowledge or seem to realize that the court there did not face the question at issue here, that is, whether a body that does not represent statutory "employees" or deal with statutory "employers" may be subject nonetheless to the LMRDA. For the Department to claim it revised its reading of § 3(j)(5) in order to "adopt the ...

"holding" of *Bremerton*, 67 Fed. Reg. at 79,284, therefore, does not contribute anything toward the reasoned analysis required of it. In sum, we cannot say the Department's interpretation of § 3(j)(5) is impermissible, but neither can we say its decision to revise its reading of the Act is supported by a reasoned analysis.

### III. Conclusion

Although the Department's revised reading of the LMRDA is otherwise entitled to *Chevron* deference, the Department has failed to supply a reasoned analysis supporting its change of position. Accordingly, we vacate the order of the district court permanently enjoining enforcement of the Final Rule but "remand [the rule] to the Department ... for a reasoned explanation of that change." *Brock*, 835 F.2d 920; *see id.* at 913 n.2.[*]

*So ordered.*

---

*We do not reach the remaining question whether the plaintiff SEAs and SFTs were "subordinate to a national or international labor organization" under 29 U.S.C. § 405(j)(5). *See supra* p. 9. Nor do we reach the question, raised by the plaintiff SEAs, whether "associations of individual employees rather than associations of labor unions ... are 'conference[s], general committee[s], joint or system board[s], or joint council[s]'" under 29 U.S.C. § 402(i). Any interim relief that may be necessary while those issues are pending, or while this case is on remand to the Department of Labor for further explanation in accordance with this opinion, is left to the district court in the first instance.