BROWN, Circuit Judge,
concurring:
The law tends to snowball. A statement becomes a holding, a holding becomes a precedent, a precedent becomes a doctrine, and soon enough we’re bowled over at the foot of a mountain, on our backs and covered in snow. So it is with our deference doctrines. Starting from a statement made in the Chevron decision — in which the Justices’ own papers confirm the Supreme Court “did not mean to do anything dramatic,” Cass R. Sunstein, Chevron Step Zero, 92 Va. L.Rev. 187, 188 (2006) — we have come to a place where an agency asks us with a straight face to defer to its interpretation of a statute of limitations: a simple, legislatively-imposed time limit on its own prosecutorial authority. As the Court’s opinion today points out, we still have not decided whether such a statutory provision is deserving of Chevron deference. See Court Op. at 754-55; Intermountain Ins. Serv. of Vail v. Comm’r, 650 F.3d 691, 707 (D.C.Cir.2011) (noting that “this circuit has yet to decide whether or under what circumstances to give Chevron deference to agency interpretations of statutes of limitations” and only conferring such deference “at least in the context of this case” — a “complex administrative sys *765 tem for assessing tax deficiencies and ... expert interpretation of technical statutory language”).[1] When we do finally decide that question, I urge us to pay closer attention to first principles.
Too often, we reflexively defer whenever an administrative agency claims statutory ambiguity, but this is not our charge. See Ala. Educ. Ass’n v. Chao, 455 F.3d 386, 392-93 (D.C.Cir.2006). Resolving disputes over statutory meaning is ordinarily the province of the courts, and the exception to this rule — deference—is not something to which an agency is entitled simply by virtue of its being an agency that has expressed an interpretation in the proper form. What makes an agency’s interpretation of a provision special is that Congress has manifested its intent that the agency’s interpretation of that provision be special. It is by Congress’s “delegation of authority to the agency to elucidate a specific provision of the statute” that an agency’s interpretation is deserving of the court’s deference. Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778; see also United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). As the Supreme Court explained in Chevron, courts defer
whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and [when] a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.... If [the agency’s] choice represents a reasonable accommodation of conflicting policies that were committed to the agency’s care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.
Chevron, 467 U.S. at 844-45, 104 S.Ct. 2778; see also id. at 866, 104 S.Ct. 2778 (“When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency’s policy ... the challenge must fail. In such a case, federal judges — who have no constituency — have a duty to respect legitimate policy choices made by those who do.”).
When determining whether or not Congress has intended an agency to make an interpretive choice, we might look to whether that interpretive choice would involve making such a monumental policy choice that, although the agency may be expert, separation-of-powers considerations mean “there may be reason to hesitate before concluding that Congress has intended such an implicit delegation.” FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (withholding deference); see also Gonzales v. Oregon, 546 U.S. 243, 262, 267-68, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (withholding deference for fear of “unrestrained” agency power in an area which is “the subject of an earnest and profound debate” and which requires policy judgments best reserved to legislatures). On the other hand, if the interpretive question neither requires an agency’s expertise nor “involve[s] reconciling conflicting policies,” we may conclude that Congress has delegated nothing to the agency. Chevron, 467 U.S. at 844, 104 S.Ct. 2778; see Stephen Breyer, Judicial *766 Review of Questions of Law and Policy, 38 Admin. L.Rev. 363, 368-69 (1986) (discussing agency expertise as a justification for deference).
Finally, we can also infer delegation or its absence by asking if “the particular question [is] one that the agency or the court is more likely to answer correctly,” or whether the question “concernfs] common law or constitutional law, or ... matters of agency administration,” or whether “the agency can be trusted to give a properly balanced answer” rather than use the interpretive opportunity to “expand [its] power beyond the authority that Congress gave [it].” Breyer, supra, at 370-71; see also Thomas W. Merrill & Kristin E. Hickman, Chevron’s Domain, 89 geo. L.J. 833, 912-13 (2001) (similarly suggesting that courts ask first “whether Congress would want the particular question about the scope of agency authority to be resolved” by deference and that “if the court concludes that Congress would not want the agency to be the primary interpreter,” it should not defer).
For example, I see no reason a court should have to defer to an agency’s interpretation of ambiguities in a provision setting out the court’s own jurisdiction to review that agency’s action. As the Ninth Circuit explained, “[w]hile we ordinarily give great weight to the interpretation of the agency charged with enforcement of the statute we are construing, that deference does not extend to the question of judicial review, a matter within the peculiar expertise of the courts.” Love v. Thomas, 858 F.2d 1347, 1352 n. 9 (9th Cir.1988). This much seems clear.
But deferring to an agency’s interpretation of its own jurisdiction without some clear indication from Congress that it has delegated jurisdiction-defining authority to the agency can raise the same separation-of-powers, expertise, and agency trust concerns. We have come to infer delegation by mere statutory ambiguity, see Chevron, 467 U.S. at 843, 104 S.Ct. 2778, but when it comes to jurisdiction, more should be required. After all, “one of this court’s principal functions [is] to ensure that [an agency] exercises power only within the channels intended by Congress, especially [when making such a determination] involves no special administrative expertise that a court does not possess.” FedEx Home Delivery v. NLRB, 563 F.3d 492, 496 (D.C.Cir.2009); see also Am. Civil Liberties Union v. FCC, 823 F.2d 1554, 1567 n. 32 (D.C.Cir.1987) (“[I]t seems highly unlikely that a responsible Congress would implicitly delegate to an agency the power to define the scope of its own power.”). It is for this reason that, when “general principles of the law” are to be applied to undisputed jurisdictional facts, “we need not accord the [agency’s] decision that special credence which we normally show merely because it represents the agency’s considered judgment.” N. Am. Van Lines, Inc. v. NLRB, 869 F.2d 596, 598 (D.C.Cir.1989).[2]
That we may have “generally” deferred to an agency’s interpretation of its own jurisdiction in the past, see, e.g., UPS, Inc. v. NLRB, 92 F.3d 1221, 1226 (D.C.Cir. 1996) (“[W]e have previously concluded that we should generally defer to an agency’s interpretation of the statute that defines its jurisdiction.”), does not make it right as a rule. That the Supreme Court *767 may have likewise indicated a willingness to defer, see, e.g., CFTC v. Schor, 478 U.S. 838, 844-45, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 380-82, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring), only shows how far we have strayed from our role. See id. at 386-87, 108 S.Ct. 2428 (Brennan, J., dissenting) (rejecting deference because “agencies do not ‘administer’ statutes confining the scope of their jurisdiction, and such statutes are not ‘entrusted’ to agencies!,] [n]or do the normal reasons for agency deference apply”). And, in fact, even in Schor, the Court did not simply infer a delegation to the agency. Instead, the Court was careful to note that there was more — “abundant evidence that Congress both contemplated and authorized the CFTC’s assertion of jurisdiction” and that “Congress intended to vest in the CFTC the power to define the scope” of its jurisdiction. 478 U.S. at 847, 842, 106 S.Ct. 3245; see also Rapanos v. United States, 547 U.S. 715, 739, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (citing Chevron but finding the jurisdictional provision clearly contrary to the agency’s interpretation).
Agency interpretations of statutes of limitations like the one at issue in this case are similarly poor candidates for deference. In general, statutes of limitations are not the sort of technical provisions requiring or even benefiting from an agency’s special expertise. Rather, much like many jurisdictional provisions, these are texts with which courts are intimately familiar, as we interpret and apply them every day. Nor do statutes of limitations generally suggest any policies that have been left by Congress for an agency to reconcile. Cf. Mississippi Power & Light Co., 487 U.S. at 386-87, 108 S.Ct. 2428 (Brennan, J., dissenting) (making the same points regarding jurisdictional statutes). Surely some may, see Intermountain, 650 F.3d at 694, 707, but many do not.
Finally, and perhaps most compellingly, statutes of limitations are designed to constrain the government’s enforcement authority and to promote finality, repose, and the efficient and prompt administration of justice. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (“Some statutes of limitations ... seek not so much to protect a defendant’s case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency.”); Carter v. Wash. Metro. Area Transit Auth., 764 F.2d 854, 857 (D.C.Cir.1985) (“[F]inality of outcome, regardless of the merits of the claim, is exactly the purpose of the statute of limitations that the legislature has enacted.”). On the one hand, the “obvious purpose” of statutes of limitations is to tell citizens and businesses when they no longer have to fear finding the government at their front door demanding satisfaction, Reading Co. v. Koons, 271 U.S. 58, 65, 46 S.Ct. 405, 70 L.Ed. 835 (1926), and on the other, statutes of limitations encourage government to act swiftly to enforce order and punish offenses. They are thus different than the ordinary authority-setting statutes which populate the administrative state and which routinely receive deference. All limits are not created equal. To say that the limits of a broad delegation of authority are discerned only at the outer bounds of judicial review surely does not mean that narrow and specific limitations on agency authority are similarly difficult to define. Statutes of limitations — being constraints on agency power — are qualitatively different than grants of plenary power. A statute of limitations uniquely limits when an *768 agency may act — even within otherwise lawful bounds.
Because an agency’s interpretation of such a statute could permit it to escape these particularly important constraints, statutes of limitations exemplify the sort of question to which an agency cannot “be trusted to give a properly balanced answer” and about which we should be especially vigilant. Breyer, supra, at 371; see Mississippi Power & Light Co., 487 U.S. at 387, 108 S.Ct. 2428 (Brennan, J., dissenting) (expressing reluctance to apply Chevron to jurisdictional statutes because such statutes “manifest[ ] an unwillingness to give the agency the freedom to define the scope of its own power”); Ernest Gellhorn & Paul Verkuil, Controlling Chevron-Based Delegations, 20 Cardozo L.Rev. 989, 1008-09 (1999) (noting that “[njothing is more important to an agency than the scope of its regulatory authority” and that “agency self-interest may cloud its judgment”); see generally Timothy K. Armstrong, Chevron Deference and Agency Self-Interest, 13 Cornell J.L. & Pub. Pol’y 203 (2004) (explaining why interpretations advancing agencies’ financial and jurisdictional self-interest have been and should be viewed skeptically by courts).
We once took some of these concerns to heart. In 3M Co. v. Browner, 17 F.3d 1453 (D.C.Cir.1994), we did not hesitate to disregard an agency’s interpretation of a general statute of limitations on federal civil penalties. To be sure, courts have repeatedly held that “[w]hen a statute is administered by more than one agency, a particular agency’s interpretation is not entitled to Chevron deference,” Proffitt v. FDIC, 200 F.3d 855, 860 (D.C.Cir.2000), but in SM, we did not rely exclusively on this rationale. Instead, we said we “[could not] agree with [the agency] that our interpretation of [the statute of limitations] ought to be influenced by [the agency’s] particular difficulties in enforcing” its own statutory responsibilities, and we rejected arguments turning on the agency’s scarce resources and needs for prioritization as “more appropriate for a congressional oversight hearing” than for meriting deference in this Court. Id. at 1461. We were rightly troubled by the notion of being asked by an agency to expand that agency’s enforcement authority when Congress had evidently not seen fit to do so.
Similarly, some of our sister Circuits have also declined to defer to agencies’ interpretations of statutes of limitations, even those contained in the statutes the agency administers, because statutes of limitations are “not a matter within the particular expertise of the [agency]” and are “clearly legal issue[s] that courts are better equipped to handle.” Bamidele v. INS, 99 F.3d 557, 561 (3d Cir.1996) (quoting Dion v. Sec’y of Health & Human Servs., 823 F.2d 669, 673 (1st Cir.1987)); Lynch v. Lyng, 872 F.2d 718, 724 (6th Cir.1989) (“[T]he amount of weight accorded an agency interpretation diminishes further when the interpretation does not require special knowledge within the agency’s field of technical expertise.”). Other circuits have nonetheless afforded deference on this subject when the statute of limitations is not general, like in SM, but specific to the agency. See Asika v. Ashcroft, 362 F.3d 264, 271 n. 8 (4th Cir.2004) (rejecting Bamidele); Interamericas Investments v. Bd. of Governors, 111 F.3d 376, 382 (5th Cir.1997); Capital Tel. Co. v. FCC, 777 F.2d 868, 871 (2d Cir.1985) (per curiam).
Confronted with a statute of limitations that does not involve the sort of intricacies that motivated us to reject Bamidele in “the context of’ Intermountain, 650 F.3d at 707, I would find any ambiguities to be ours to resolve and not the agency’s. Our narrower disposition of this case, instead *769 assuming without deciding that Chevron applies, should not be read as foreclosing a future panel of this Court from tackling anew the deference owed to agency interpretations of statutes of limitations, even those reached and conveyed in the proper form. When that time comes, I hope this Court will carefully consider why and when we are meant to defer before we endow an agency’s mere invocation of Chevron with talismanic authority. We must steadfastly guard our prerogative to “say what the law is,” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), and resist the reflex of deference.

. We have deferred to an agency’s interpretation of the tolling of a limitations period contained in its own regulations. Alldata Corp. v. NLRB, 245 F.3d 803, 807 (D.C.Cir.2001). But no question of statutory interpretation was presented in that case, and consequently, the deference owed to an agency’s interpretation of a statutory statute of limitations was not discussed.

. In N. Am. Van Lines, we did still afford "some deference” to the agency's “conclusions drawn from the factual setting” of the particular case, 869 F.2d at 599, but the Secretary did not rely on any such particular conclusions in this case. Far from it, the Secretary made a bright-line textual argument which, if accepted, would govern the timeliness of citations in every future case.