# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 8, 2010         Decided March 30, 2010

No. 09-1032

UNITED STATES POSTAL SERVICE,
PETITIONER

v.

POSTAL REGULATORY COMMISSION AND UNITED STATES OF
AMERICA,
RESPONDENTS

ALLIANCE OF NONPROFIT MAILERS, ET AL.,
INTERVENORS

---

On Petition for Review of an Order
of the Postal Regulatory Commission

---

*Miriam R. Nemetz* argued the cause for petitioner. With her on the briefs were *Kenneth S. Geller* and *Melanie W. Rughani*.

*Eric Fleisig-Greene*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Michael S. Raab*, Attorney, *Stephen L. Sharfman*, General Counsel, Postal Regulatory Commission, *R. Brian Corcoran*, Assistant General Counsel, and *Kenneth E. Richardson*, Attorney.

Before: TATEL, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:    The United States Postal Service seeks review of a Postal Regulatory Commission order concluding that certain activities carried on by the Service – the provision of philatelic services (relating to stamp collecting) and the leasing and licensing of Postal Service property – are, under the Postal Accountability and Enhancement Act, subject to the Commission's review for possible termination.  We deny the Service's petition.

I

In 1970, what was formerly the cabinet-level Post Office Department was transformed by statute into the modern government-owned corporation known as the United States Postal Service.  As part of this transformation, the Service was given a number of new powers:  *inter alia*, the authority to acquire, sell, build, and lease property; to provide philatelic services; and to provide "special nonpostal or similar services."[1]

Accordingly, the Service began to engage in a number of ventures unrelated or only tangentially related to the delivery of mail.  The Service gradually expanded its lines of business, and by the late 1990s, its nonpostal activities were substantial.  They included computer-based mail, international fax services, photocopying, philatelic services, antenna leases, and selling phonecards, T-shirts, mugs, and other souvenirs.

---

[1] Pub. L. No. 91-375, § 404, 84 Stat. 719, 723-24 (1970).

Congress considered legislation that would eliminate or limit the Service's authority to provide such nonpostal services as early as 1996,[2] but these efforts were redoubled following the 2003 publication of a report by a presidential blue-ribbon commission tasked with making recommendations to improve the Postal Service. The commission found that the Service had entered "dubious new business ventures that most Americans would consider far afield of its basic function – delivering the mail to everyone." These efforts largely had not been profitable. But by forcing private companies to compete against the Service, these ventures had resulted in market distortion, and the Service had been distracted from improving traditional postal services. So the commission recommended that Congress restrict the Service's authority to include only services directly related to the delivery of mail.[3]

Congress responded in 2006 with the Postal Accountability and Enhancement Act. It repealed the Service's authority to offer "special nonpostal or similar services," but it did not explicitly mention certain nonpostal activities separately authorized under various statutory provisions, such as the ones particularly at issue in this case – philatelic and property leasing activities. It did, however, provide that the Postal Regulatory Commission was to conduct a review of "*each* nonpostal service offered by the Postal Service"[4] (emphasis added) to determine

---

[2] *See, e.g.*, Postal Service Core Business Act of 1996, H.R. 3690, 104th Cong., at 1 (1996).

[3] Embracing the Future: Making the Tough Choices to Preserve Universal Mail Service (2003).

[4] The statutory subsection granting this authority – 39 U.S.C. § 404(e) – states in full:

(1) In this subsection, the term "nonpostal service" means any

whether it should be terminated or continued subject to Commission regulation as either a market dominant, competitive or experimental product.[5]

---

service that is not a postal service defined under section 102(5).

(2) Nothing in this section shall be considered to permit or require that the Postal Service provide any nonpostal service except that the Postal Service may provide nonpostal services which were offered as of January 1, 2006, as provided under this subsection.

(3) Not later than 2 years after the date of enactment of the Postal Accountability and Enhancement Act, the Postal Regulatory Commission shall review each nonpostal service offered by the Postal Service on the date of enactment of that act and determine whether that nonpostal service shall continue, taking into account–

(A) the public need for the service; and

(B) the ability of the private sector to meet the public need for the service.

(4) Any nonpostal service not determined to be continued by the Postal Regulatory Commission under paragraph (3) shall terminate.

(5) If the Postal Regulatory Commission authorizes the Postal Service to continue a nonpostal service under this subsection, the Postal Regulatory Commission shall designate whether the service shall be regulated under this title as a market dominant product, a competitive product, or an experimental product.

[5] The Commission is empowered to ensure that the Service is not subsidizing its competitive products with revenues from market dominant products or engaging in below-cost pricing of competitive products. The Commission regulates rates for market dominant

Several other statutory provisions should be mentioned. A grandfather clause, § 404(e)(2), ensured that certain existing nonpostal services could continue pending Commission review, and § 404(e)(1) defines a nonpostal service as "*any* service that is not a postal service" (emphasis added). Elsewhere in the postal statutes, postal services are defined to cover "the delivery of letters, printed matter or mailable packages, including acceptance, collection, sorting, transportation, or other functions ancillary thereto."[6]

In December of 2007, the Commission started its review of nonpostal services. The Commission asked the Service to provide details of all of its activities that did not meet the statutory definition of a postal service. The Service refused to do so because, in its view, the Act only gave the Commission authority to review those nonpostal services previously conducted under the repealed section of § 404 (which authorized "special nonpostal or similar services") and did not give authority to review activities authorized by specific grants of authority. Thus, according to the Service, the Commission could not review the Service's provision of philatelic services or its leasing and licensing of property because the Act left in place specific statutory authorization for those activities in § 404(a)(5) and § 401(5) respectively. Alternatively, the Service argued that its leasing and licensing of property were not subject to the Commission's review because those were not "services" at all. The Commission rejected both arguments and ordered the Service to provide a list of all nonpostal services; the Service complied but continued to assert that the Commission was acting *ultra vires.*

products.

[6] 39 U.S.C. § 102(5).

After nearly a year of adjudicatory proceedings, the Commission issued the results of the review required by § 404(e)(3). Its order, once again, rejected the argument that it was not authorized to review nonpostal services for which an independent grant of statutory authority existed. The Commission explained that under the statute, the Service can only provide two (mutually exclusive) types of services – postal services and nonpostal services – and that § 404(e)(3) plainly requires the Commission to review *all* nonpostal services. The Commission added that the Service's argument that the statute creates a third category of services – not postal and yet still not subject to the Commission's power – ignores the purpose underlying the Act, which was to rein in all of the Service's nonpostal commercial ventures.

Also rejected was the argument that the leasing and licensing of property did not constitute a "service" under the act. Since the word "service" was not defined by the statute, the Commission sought suggestions by parties to the proceeding, before defining the term as "any ongoing commercial activity offered to the public for the purpose of financial gain." The Commission said that definition encompassed the types of activities that, in its view, were the cause for congressional concerns about the Service straying from its core responsibilities. The Commission concluded that leasing of property and licensing of intellectual property constituted services under this definition. However, the Commission did agree that several revenue-generating activities – including the *sale* of property as well as services provided to government agencies – did not qualify as "services" and thus were not subject to the Commission's review.

After its review, the Commission determined that both of the services relevant to this appeal – philatelic services and the licensing and leasing of property – *should* be allowed to

continue, subject to the Commission's regulation over philatelic services as a market dominant product, and licensing and leasing of property as a competitive product.

## II

The Service reiterates before us the same arguments it presented to the Commission – 1) that the Commission's authority under § 404(e)(3) does not extend to nonpostal services authorized under "independent" explicit grants of authority and, alternatively, 2) that leasing and licensing of property does not even constitute a "service." Although the Commission authorized the continuation of the activities in question – philatelic services and leasing – the Service objects to the regulatory burden it must endure.[7]

Taking up the first argument, we note that the Service has a difficult linguistic task. The key statutory provision on which the Commission relies, § 404(e)(3), does say that the Commission shall review *each* nonpostal service offered by the Postal Service without any stated limitation. Assuming that property leasing and philatelic services are nonpostal services, the plain language of that subsection would appear to cover both activities (the Service does not challenge the Commission's determination that philatelic services are nonpostal services).

In a heroic effort to create at least an ambiguity (the Service actually goes further to claim the statute plainly supports its reading), the Service points first to subsection (e)(2), the grandfather clause, which states that "[n]othing *in this section* shall be considered to permit or require that the Postal Service

---

[7] We have the impression that the Service's real concern may well be the initiation of possible future activities. That issue is, of course, not before us.

provide any nonpostal service, except that the Postal Service may provide nonpostal services which were offered as of January 1, 2006, as provided under this subsection" (emphasis added).  The Service's argument, as we understand it, is that by using the phrase "in this section" in § 404 (e)(2), the Congress meant to cabin § 404(e)(3), another subsection, in the same fashion, i.e., that § 404(e)(3)'s review authority, despite the phrase, "each nonpostal service," was limited only to nonpostal services that were grandfathered by § 404(e)(2).  Of course, the obvious response is that § 404(e)(3) does not contain the limitation in § 404(e)(2), and its absence creates a negative implication – that no limitation was intended.  Indeed, the "nothing in this section" clause's purpose, apparently was only to rebut the possible implication that this section could, in any respect, constitute a new grant of authority to offer nonpostal services.  Thus, we find it difficult to conclude that the limiting phrase "in this section" in § 404(e)(2) casts any meaning on § 404(e)(3).[8]

The other statutory interpretation arguments the Service presents are equally labored.   It is claimed that the Commission's position, in effect, is that § 404(e)(3) repeals, by

---

[8] Some language in the order suggests the Commission interpreted § 404(e)(2) to prohibit the Service from offering any nonpostal service – even those specifically authorized – unless it was grandfathered and received Commission approval.  The Commission now concedes that the phrase "[n]othing in this section" only restricts (e)(2)'s scope (though presumably the Commission would maintain it still applies to philatelic services as they are authorized in § 404(a)(5) – the same statutory section).  The Service says this constitutes a *post hoc* justification for the Commission's decision and we must reverse under *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  We do not agree.  The Commission's order's reference to § (e)(2) appears only a makeweight; the order's primary reliance is on its interpretation of § (e)(3), which independently supports the Commission's position.

implication, the separate grants of authority to engage in philatelic and leasing activities and repeals by implication are not favored. But that is not the Commission's position; it is, rather, that § 404(e)(3) *conditions* the authority the Service maintains to engage in those activities. Further, the Service asserts – based in part on legislative history which revealed no particular concern about philatelic or leasing services – that it would not serve the purpose of the statute to include these activities. But that Congress did not specifically address these two activities in the legislative history is of no matter; legislative language often sweeps broader than the exact circumstances that prompted a statute.

Still we are told the criteria under § 404(e)(3) – determining whether there is a public need for the services and whether the private sector can supply the services – are "ill-suited" to apply to these activities, particularly leasing. But petitioner does not explain clearly why the criteria are "ill-suited." The public's need can easily refer to the demand for leasing space generally or the revenue the Service gains from the leasing – the latter of which the Commission emphasized. One might have thought that the ability of the private sector to meet the demand would depend on available competitive leasing space, but the Commission thought that since real property was unique, it was not necessary to consider private leasing availability. The Service could have claimed that the Commission was obliged to compare alternative leasing opportunities – but that would have been an arbitrary and capricious challenge to the Commission's application of the statute, which petitioner did not make. That was surely because a remand on that issue would not have served its interest.

Assuming, *arguendo*, however, that the Service has succeeded in at least establishing that the statute is ambiguous, we turn to the question of *Chevron* deference *vel non*. The

Service contends that since both the Service and the Commission have authority to interpret the statute, neither is entitled to deference. It relies on our opinion in *Salleh v. Christopher*, 85 F.3d 689, 691 (D.C. Cir. 1996), where both the Secretary of State and the Foreign Service Grievance Board relied on separate, and apparently conflicting, provisions of a statute conferring authority to finally determine whether a foreign service officer could be discharged. Under those circumstances, we could afford deference to neither agency. That is not our case; there is no dispute that the issue before us is the proper interpretation of § 404(e)(3), and that provision was clearly delegated to the Commission to implement and thereby to interpret. *See Dep't of Health and Human Services v. FLRA*, 920 F.2d 45, 48 (D.C. Cir.1990). Therefore, assuming the statute has some ambiguity, we must defer to the Commission's interpretation regarding the coverage of § 404(e)(3) and affirm it, if reasonable. Since the Commission's interpretation is, at least, the more likely one, it is certainly reasonable.

That brings us to the petitioner's alternative argument that leasing of property is not a service at all. Here we grant readily petitioner's contention that the term "service," which is not defined in the statute, is unquestionably ambiguous. But as we have just observed, the Commission is entitled to *Chevron* deference as to its construction. It will be recalled that the Commission's interpretation of services is "any ongoing commercial activity offered to the public for the purpose of financial gain." Although the Service observed that the definition neatly avoided implicating services provided to other government agencies (and therefore it was presumably suspect), it does not object to the definition on that ground, but rather only to the Commission's failure to exclude leasing or licensing of property.

In support of its claim that leasing is not a "service," the petitioner points to other provisions of the statute, particularly § 401(5), which authorized the Service "to hold, maintain, sell, lease or otherwise dispose of such property or any interest therein; and to provide *services in connection therewith* and charges therefor" (emphasis added). That language indicates, according to the Service, that Congress recognized that "services" were in a different category than leasing of property. We do not think that follows. For one thing, maintenance is unquestionably a service. Moreover, the sentence can just as easily be read as meaning leasing and maintenance of property and *other* services in connection with such leasing and maintenance. We can easily conceive of statutory language that would list undeniable services such as, for example, "security and maintenance" along with "ancillary services." Again, we conclude that the Commission's construction of § 404(e)(3) this time to include property leasing and licensing as nonpostal services is quite reasonable and therefore permissible.

Accordingly, the petition is denied.

*So ordered.*