# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 26, 2018          Decided July 27, 2018

No. 17-1160

GOOD FORTUNE SHIPPING SA,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

On Appeal from the Decision
of the United States Tax Court

*Stephen P. Flott* argued the cause for appellant. With him on the briefs were *Joseph G. Siegmann* and *Brittany N. Oravec*.

*Richard Caldarone*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *David A. Hubbert*, Deputy Assistant Attorney General, and *Thomas J. Clark*, Attorney.

Before: GARLAND, *Chief Judge*, and GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In 2007, the foreign shipping corporation Good Fortune Shipping SA ("Good Fortune")

attempted to exempt some of its U.S.-based income from taxation. But in order to qualify for the exemption, a certain percentage of Good Fortune's stock needed to be owned by residents of a country that provided a reciprocal tax exemption. At that time, the Internal Revenue Service (IRS) categorically prohibited any consideration of bearer shares—securities owned by whoever holds physical certificates issued by the company—when assessing whether a sufficient amount of a foreign shipper's stock was owned by qualifying shareholders. The IRS refused to grant Good Fortune the exemption because all of the company's stock was made up of bearer shares. Good Fortune challenged the IRS's approach as inconsistent with the Internal Revenue Code, and the Tax Court ruled in favor of the IRS. Because the IRS's regulation prohibiting consideration of bearer shares unreasonably interpreted the Code, we reverse.

I

A

Under the Internal Revenue Code (the "Code"), foreign corporations generally must pay tax on any income derived from operating ships that transport goods to or from the United States (called "United States source gross transportation income"). I.R.C. § 887(a). However, the Code also historically exempted the income of certain foreign shippers from this tax. Prior to 1986, federal law exempted a foreign corporation's shipping income so long as the corporation registered its ships in a country that granted "equivalent tax exemptions to U.S. citizens and U.S. corporations." H.R. Rep. No. 99-841, at 597 (1986) (Conf. Rep.). This exemption applied "without regard to the residence of persons receiving the exemption or whether commerce is conducted in the country of registry." S. Rep. No. 99-313, at 340 (1986).

This exemption did not work as effectively as Congress had anticipated. Members of Congress had hoped that the registration-based exemption would encourage the "international adoption of uniform tax laws" that eliminated the prospect of double taxation from shippers' home countries and their countries of operation. S. Rep. No. 67-275, at 14 (1921). Although U.S. shippers were required to pay U.S. tax on their income, foreign shippers could avoid the U.S. tax by simply registering (or "flagging out") their ships in a country that provided a reciprocal exemption, regardless of whether the ships' owners had any connection to that country. *See* S. Rep. No. 99-313, at 340-41. Congress ultimately found that this registration-based exemption "place[d] U.S. persons with U.S.-based transportation . . . at a competitive disadvantage" compared to foreign shippers who claimed the U.S. exemption and were not taxed by either their countries of residence or registration. *Id.* at 340.

Congress therefore tightened the exemption in the Tax Reform Act of 1986, Pub. L. No. 99-514, § 1212, 100 Stat. 2085, 2536-37. After the 1986 Act, the Code places a four-percent tax on the U.S. source gross transportation income of nonresident alien individuals and foreign corporations. *See* I.R.C. § 887(a). Congress in 1986 replaced the registration-based exemption with a new residency-based exemption for foreign shippers. A foreign shipper can qualify for the new exemption only if it is "organized in a foreign country" that "grants an equivalent exemption to corporations organized in the United States." *Id.* § 883(a)(1). However, even a foreign shipper organized in such a country is ineligible for the exemption "if 50 percent or more of the value" of its stock "is owned by individuals who are not residents" of a country providing a reciprocal exemption. *Id.* § 883(c)(1).

In 2003, the IRS promulgated a regulation elaborating on the statutory requirement that residents of a country providing a reciprocal exemption own more than half of the foreign shipper's stock. *See* Exclusions from Gross Income of Foreign Corporations, 68 Fed. Reg. 51,394 (Aug. 26, 2003) (the "2003 Regulation"). To qualify as an exempted foreign corporation under the 2003 Regulation, a shipper must satisfy the "qualified shareholder test." Under that test, an exempted corporation must prove, among other things, that "more than 50 percent of the value of its outstanding shares is owned" by qualified shareholders, either directly or indirectly through application of attribution rules, "for at least half of the number of days in the foreign corporation's taxable year." 26 C.F.R. § 1.883-4(a) (2007). An individual is a "qualified shareholder" only if, among other things, he is a resident of a reciprocating country. *Id.* § 1.883-4(b)(1)(i)(A). And a foreign-corporation shareholder qualifies only if it is organized in a reciprocating country. *Id.* § 1.883-4(b)(1)(i)(C).

Generally, a foreign corporation claiming an exemption under the qualified shareholder test "must establish all the facts necessary to satisfy the [IRS] that more than 50 percent of the value of its shares is owned . . . by qualified shareholders." *Id.* § 1.883-4(d)(1). When it comes to establishing the facts necessary to demonstrate corporate ownership, the 2003 Regulation treats differently "bearer shares" and "registered shares" of corporate stock. Bearer shares are owned by the "physical bearer of the stock certificate" and traditionally have "no recorded ownership information." *Black's Law Dictionary* (10th ed. 2014). On the other hand, "registered shares" are securities "recorded in the issuer's books." *Id.* Under the 2003 Regulation, a corporation could prove it met § 883(c)(1)'s ownership requirement by submitting company records proving up registered shareholders' identities and countries of residence. *See* 26 C.F.R. § 1.883-4(d)(4). But a qualified

shareholder may *not* "own its interest in the foreign corporation through bearer shares." *Id.* § 1.883-4(b)(1)(ii); *see also id.* § 1.883-4(c)(1) ("No attribution will apply to an interest held directly or indirectly through bearer shares."); *id.* § 1.883-4(d)(1) ("A foreign corporation cannot meet [the stock ownership] requirement with respect to any stock that is issued in bearer form. A shareholder that holds shares in the foreign corporation either directly or indirectly in bearer form cannot be a qualified shareholder."). The IRS drew this distinction and prohibited the use of bearer shares because of "the difficulty of reliably demonstrating the true ownership of bearer shares." 68 Fed. Reg. at 51,399. The 2003 Regulation provided no further explanation for the categorical exclusion of bearer shares.

B

Good Fortune is a corporation organized under the laws of the Republic of the Marshall Islands. The Marshall Islands offers a reciprocal exemption to U.S. shippers sufficient to satisfy § 883(a)(1). *See* Rev. Rul. 2001-48, tbl. I.A, 2001-2 C.B. 324; Rev. Rul. 2008-17, tbl. I.A, 2008-1 C.B. 626. During the 2007 tax year, all of Good Fortune's outstanding stock was composed of bearer shares, issued as physical certificates for which neither Good Fortune nor any financial institution maintained any formal records of ownership or transfer.

For the 2007 tax year, Good Fortune reported slightly less than $4.1 million in U.S. source gross transportation income. That income would have been taxable under I.R.C. § 887, unless it qualified for the exemption in § 883(a)(1). Good Fortune claimed that the income qualified for that exemption and provided documentation purporting to show that all of its bearer shares were indirectly owned by individuals residing in countries that provide a reciprocal exemption to U.S. corporations. Good Fortune also argued that the 2003

Regulation prohibiting any consideration of bearer shares was unlawful.

The IRS sent Good Fortune a notice of deficiency for the 2007 tax year reflecting the IRS's determination that Good Fortune's U.S. source gross transportation income for that year was about $3.6 million, not $4.1 million. The IRS also determined that none of that income could be exempted presumably because all of Good Fortune's stock had been issued as bearer shares and the 2003 Regulation prohibited their consideration. The IRS accordingly determined that Good Fortune had an income tax deficiency of approximately $143,500 for the 2007 tax year.

Good Fortune then filed a petition in the Tax Court for a redetermination of its 2007 deficiency. The company conceded that it could not qualify for the § 883(a)(1) exemption under the 2003 Regulation but asserted that the regulation's categorical exclusion of bearer shares was an impermissible interpretation of § 883. The Commissioner filed a motion for summary judgment and Good Fortune filed a cross-motion for the same.

The Tax Court granted the Commissioner's motion and ordered Good Fortune liable on its 2007 tax deficiency. Applying the well-worn framework from *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Tax Court found that Congress had not "directly spoken to the precise question at issue," *id.* at 842, namely, "how to establish ownership by individuals for the purposes of section 883(c)(1)" or "how to establish ownership where the shares of the foreign corporation are owned in bearer form," *Good Fortune Shipping SA v. Comm'r*, 148 T.C. No. 10, slip op. at 32 (Mar. 28, 2017).

Having found the statute silent or ambiguous on that question, the Tax Court then considered whether the IRS's interpretation of § 883 was reasonable. *Id.* at 25. The Tax Court found the 2003 Regulation reasonable because it "provide[d] certainty and resolve[d] the difficult problems of proof associated with establishing ownership of bearer shares." *Id.* at 46. According to the Tax Court, the 2003 Regulation "set forth a sensible approach to effecting the intent of Congress in enacting section 883(c)(1) to ensure that abuse will not occur which will result in certain types of shipping transportation income described in section 883(a)(1) not being taxed." *Id.*

Good Fortune timely appealed the Tax Court's order.

II

The Tax Court had jurisdiction over Good Fortune's petition for a redetermination under I.R.C. §§ 6213(a), 6214(a), and 7442. We have appellate jurisdiction under I.R.C. § 7482(a)(1).

We review de novo the Tax Court's legal conclusions. *See, e.g.*, *Barnes v. Comm'r*, 712 F.3d 581, 582 (D.C. Cir. 2013).

III

A

The IRS does not argue that its interpretation of § 883 is compelled by the statute; rather the agency only maintains that "Congress has not directly spoken" to whether shippers may use bearer shares to satisfy § 883(c)(1)'s ownership requirement. IRS Br. 19. So for the IRS to prevail, it must demonstrate that § 883 is silent or ambiguous as to the treatment of bearer shares under § 883(c)(1) *and* that its

interpretation, as embodied in the 2003 Regulation, is reasonable. *See Chevron*, 467 U.S. at 842-43.

When we consider the lawfulness of an agency's statutory interpretation under *Chevron*, we usually ask first whether the statute at issue "unambiguously forecloses the agency's interpretation." *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 663 (D.C. Cir. 2009). However, we may also assume arguendo that the statute is ambiguous and proceed to *Chevron*'s second step. *See, e.g.*, *Lubow v. U.S. Dep't of State*, 783 F.3d 877, 884 (D.C. Cir. 2015); *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 599 F.3d 705, 710 (D.C. Cir. 2010); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1178 (D.C. Cir. 2003); *Hill v. Norton*, 275 F.3d 98, 99 (D.C. Cir. 2001); *Teicher v. SEC*, 177 F.3d 1016, 1021 (D.C. Cir. 1999).

We'll give the IRS the benefit of the doubt and assume that § 883 does not unambiguously foreclose its interpretation. We make this assumption because even proceeding to *Chevron* Step Two, we conclude that the IRS's interpretation of § 883 in the 2003 Regulation is unreasonable and cannot stand.

B

At *Chevron* Step Two, we ask whether the IRS's interpretation is "reasonable." *AT&T Corp. v. FCC*, 220 F.3d 607, 621 (D.C. Cir. 2000). That is, we consider whether the interpretation is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53 (2011) (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)). Our focus is thus on "whether the [agency] has reasonably explained how the permissible interpretation it chose is 'rationally related to the goals of' the statute." *Village of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 665 (D.C.

Cir. 2011) (quoting *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 388 (1999)).

Whether an agency's construction is reasonable depends, in part, "on the construction's 'fit' with the statutory language, as well as its conformity to statutory purposes." *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (quoting *Abbott Labs. v. Young*, 920 F.2d 984, 988 (D.C. Cir. 1990)). Indeed, "[t]he starting place for any *Chevron* Step Two inquiry is the text of the statute." *Van Hollen v. FEC*, 811 F.3d 486, 492 (D.C. Cir. 2016).

Section 883(c)(1) states in relevant part that the exemption for foreign shippers introduced in § 883(a)(1) "shall not apply to any foreign corporation if 50 percent or more of the value of the stock of such corporation is owned by individuals who are not residents of" a country granting a reciprocal tax exemption. Congress has therefore determined that the tax exemption shall not be granted to foreign corporations if a certain percentage of their stock "is *owned* by individuals who are not residents of" a reciprocating country. I.R.C. § 883(c)(1) (emphasis added). The flipside of this prohibition is a mandate: If 50 percent or more of a shipper's stock "is owned by individuals" who *are* residents of reciprocating countries, then § 883(c)(1) poses no obstacle to an exemption. And if § 883(c)(1) poses no obstacle, then the relevant income "shall not be included in gross income of a foreign [shipping] corporation" and "shall be exempt from taxation." *Id.* § 883(a).

The IRS contends—and it is undisputed—that § 883(c)(1) is silent as to "what type of proof suffices to show any corporation's entitlement to the exemption." IRS Br. 19; *see also* Good Fortune Br. 31 (conceding that Good Fortune "does not contest" the IRS's "authority to issue regulations addressing attribution and proof of ownership"). That said,

§ 883 implies that if a sufficient portion of a foreign corporation's stock is "owned" by qualified shareholders, the corporation will qualify for the exemption. Bearer shares are a valid form of ownership, and the 2003 Regulation acknowledged as much. *See* 26 C.F.R. § 1.883-4(b)(1)(ii) (2007) (requiring that a qualified shareholder "not *own* its interest in the foreign corporation through bearer shares" (emphasis added)). Nevertheless, the IRS claims that its refusal to consider bearer shares under the 2003 Regulation reasonably "treat[s] the ownership of bearer shares at a prior time as a fact not capable of sufficient proof." IRS Br. 28.

The IRS therefore attempts to characterize the 2003 Regulation as merely establishing modes of proving corporate ownership. But when the agency goes so far as to set an insurmountable burden of proof—in which no amount of relevant evidence could possibly suffice—the line between merely establishing a method of proving ownership and defining what counts as ownership begins to dissolve. As Good Fortune rightly notes, the IRS's abject refusal to attribute ownership for bearer shares risks "conflat[ing] proof of ownership with the meaning of ownership." Good Fortune Br. 28. Bearer shares are indisputably a legally valid form of corporate ownership, and yet the IRS's regulations categorically deny those shares any role in establishing ownership for the purposes of the § 883 exemption. This approach risks undercutting § 883(c)(1)'s use of the term "owned."

Even if § 883 grants the IRS significant discretion to establish how to prove ownership, it hardly authorizes the agency to categorically deny consideration of a recognized form of ownership based on only a single, undeveloped statement that it is "difficult[]" to reliably track the location of a given owner. 68 Fed. Reg. at 51,399. If the IRS found that the

transferable nature of bearer shares made substantiation impossible, we might conclude that the 2003 Regulation reasonably implemented that finding. Indeed, a kind of stock that is entirely impossible to track might not constitute a form of ownership contemplated by § 883(c)(1). But the IRS has never made (much less adequately supported) such an absolute claim of impossibility with regard to bearer shares. The IRS's interpretation instead appears to rewrite § 883(c)(1) to require not only valid ownership, but ownership that is not "difficult" to track. Even if this regulatory amendment to § 883 is not unambiguously foreclosed by the statute's language, its unsubstantiated treatment of ownership "comes close to violating the plain language of the statute"—indicating that the 2003 Regulation is unreasonable at *Chevron* Step Two. *Goldstein*, 451 F.3d at 881.

Additionally, while the IRS's interpretation of § 883 is "entitled to no less deference . . . simply because it has changed over time," *Nat'l Home Equity Mortg. Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1360 (D.C. Cir. 2004), the agency must nevertheless engage in "'reasoned analysis' sufficient to command our deference under *Chevron*," *Ala. Educ. Ass'n v. Chao*, 455 F.3d 386, 396 (D.C. Cir. 2006). A sufficiently reasoned analysis requires the IRS to "display awareness that it *is* changing position" and "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 156 (D.C. Cir. 2005) ("A statutory interpretation . . . that results from an unexplained departure from prior [agency] policy and practice is not a reasonable one."). Moreover, when assessing the reasonableness of the IRS's interpretation we look only to "what the agency said at the time of the rulemaking—not to its lawyers' post-hoc rationalizations." *Council for Urological Interests v. Burwell*, 790 F.3d 212, 222 (D.C. Cir. 2015).

As early as 1991 the IRS presumed that bearer shares were "owned by individual residents of a foreign country which does not provide an equivalent exemption, for purposes of section 883(c)." Rev. Proc. 91-12, § 8.02(3), 1991-1 C.B. 473. But this presumption was only triggered "[i]n the absence of . . . documentation" demonstrating that more than 50 percent of the corporation's shares were owned by residents of a reciprocating country. *Id.* Therefore, between 1991 and 2003, the IRS apparently thought sufficient documentation regarding the ownership of bearer shares *could* secure a tax exemption under § 883. And yet in 2003 the agency concluded that the "difficulty of reliably demonstrating the true ownership of bearer shares" warranted the flat prohibition at issue here. 68 Fed. Reg. at 51,399. The IRS never explained how the pre-existing opportunity to provide substantiating documentation had somehow become unworkable since 1991. Nor did the agency explain if or how "reliably demonstrating the true ownership of bearer shares" was any more difficult in 2003 than in 1991.

Indeed, given the IRS's later recognition in 2010 that some forms of bearer shares were becoming *easier* to track over time, the agency's decision to treat bearer shares *less* favorably in 2003 than in 1991 is all the more inexplicable. In 2010, the IRS ultimately amended its treatment of bearer shares for purposes of the exemption in § 883(a)(1). Rather than categorically exclude bearer shares from consideration, the amended regulation allows bearer shares to count toward the § 883 exemption if they satisfy one of two conditions. First, they count toward the exemption if the shares are "dematerialized" or "represented only by book entries" with "no physical certificates . . . issued or transferred." 26 C.F.R. § 1.883-1(c)(3)(i)(G) (2010); *see also id.* § 1.883-4(b)(1)(ii). Second, the bearer shares count toward the exemption if they are

"immobilized," in which "evidence of ownership is maintained on the books and records of the corporate issuer or by a broker or financial institution." *Id.* § 1.883-1(c)(3)(i)(G). While the IRS continued to maintain that it has "been difficult to reliably prove ownership of bearer shares," it nevertheless recognized in 2010 that dematerialized and immobilized bearer shares had "become increasingly common" and "provide the ability to reliably identify the beneficial owner of bearer shares." Exclusions from Gross Income of Foreign Corporations, 75 Fed. Reg. 56,858, 56,860 (Sept. 17, 2010).

The IRS abandoned the 2003 Regulation's categorical, exclusionary rule in 2010 in response to the "recent increase in the number of corporations switching to immobilized or dematerialized bearer shares." IRS Br. 34; *see also* 75 Fed. Reg. at 56,860. While the IRS maintained that dematerialized and immobilized bearer shares had become "increasingly common" by 2010, 75 Fed. Reg. at 56,860, at no time has the IRS ever argued that such bearer shares were nonexistent or obscure between 2003 and 2010, nor that they were less prevalent in 2003 than in 1991. Even if the IRS were correct that "there is no guarantee" that foreign shippers kept such records of bearer shares before 2010, IRS Br. 34, that skepticism alone does not justify the 2003 Regulation's categorical ban. If certain foreign shippers did not keep sufficient records, a substantiation requirement like those embraced by the IRS in 1991 or 2010 would have readily disposed of any such cases.

The 2003 Regulation also appears unreasonable because it treats bearer shares with disproportionate disfavor compared to other forms of corporate ownership sharing similar alleged problems. The IRS argues that § 883(c)(1) is an "anti-abuse provision" that would be undermined if the IRS accepted bearer shares as proof of ownership without any "reasonable

method of proving or disproving [a] statement of ownership." *Id*. at 21, 23. Even assuming that is true, there is a potential for abuse with other types of corporate shares, many of which the IRS accepts as proof of ownership under § 883(c)(1). For example, the IRS concedes that other financial arrangements—including the appointment of nominees and trustees—can "be used to obscure the identity of the beneficial owners." *Id.* at 37. Nevertheless, rather than promulgating broad, categorical prohibitions governing those financial instruments, the IRS instead established "safeguards against the use of trusts and nominees to obscure shareholders' identities in the regulations implementing § 883." *Id.* While the IRS has made it difficult to earn the exemption in § 883 with these financial instruments, the agency will find qualifying ownership if "the nominee or trustee submits to the IRS detailed statements substantiating the identity of the beneficial owners." *Id.* at 38 (citing 26 C.F.R. § 1.883-4(d)(4)(v)). Of course, the 2003 Regulation denies bearer shareholders this same opportunity to submit detailed, substantiating statements.

We've previously recognized that when an agency interprets a statute to afford disparate treatment between two different objects of concern, "we cannot defer to the [agency's] interpretation premised on such a difference unless the [agency] adequately supports it." *Northpoint Tech.*, 412 F.3d at 156. When the IRS promulgated the 2003 Regulation, it offered no justification for treating bearer shares differently than nominees and trustees under § 883. That's enough to render the distinction inadequate for purposes of *Chevron* Step Two. *See Envtl. Def. Fund, Inc. v. EPA*, 898 F.2d 183, 189 (D.C. Cir. 1990) ("We cannot sustain an action merely on the basis of interpretive theories that the agency might have adopted and findings that (perhaps) it might have made.").

In any event, the IRS's post-hoc attempt to distinguish nominees and trustees does not adequately support the agency's disparate treatment of bearer shares. The IRS argues that a "substantiation-based solution" is simply "inappropriate" for bearer shares because of their "transferable nature," a problem that is not as acute with nominees and trustees. IRS Br. 40-41. But while bearer shares' transferable nature might make it *more* difficult to substantiate the identity of their owners at any given time, the IRS has never explained why that difficulty alone makes a substantiation-based method of proving bearer-share ownership "inappropriate" relative to proving the ownership of nominees and trustees. Indeed, the agency even now concedes that "corporations might have formal records of the ownership of bearer shares even though there is no requirement that they keep such records." *Id.* at 34. Quite simply, the IRS's conclusory rejection in 2003 of any substantiation-based method for proving bearer-share ownership does not adequately reckon with analogous problems of proof facing other forms of ownership.

Finally, the categorical exclusion of bearer shares endorsed in the 2003 Regulation was even out of step with the IRS's treatment of bearer shares in similar contexts. For example, in another provision of the Code, some foreign corporations can receive comparably favorable tax treatment if their stock is regularly traded on an established securities market in their countries of residence. *See* I.R.C. § 884(e)(4)(B). However, stock that is otherwise regularly traded will not qualify for favorable treatment if the stock is "closely held." *See* Branch Profits Tax, 57 Fed. Reg. 41,644, 41,648 (Sept. 11, 1992). A foreign corporation is closely held if at least 50 percent of its stock is owned by a certain type of shareholder. *See* 26 C.F.R. § 1.884-5(d)(4)(iii) (2007). While the foreign corporation bore the burden of proving that it is not closely held, it can meet that burden "with either registered or

bearer shares . . . if it has no reason to know and no actual knowledge of facts that would cause the corporation's stock not to be treated as regularly traded . . . ." *Id.* § 1.884-5(d)(5); *see also* 57 Fed. Reg. at 41,648 ("[C]orporations with bearer shares can meet the burden of proof . . . as long as they have no knowledge and no reason to know their stock is closely held."). Therefore, the IRS recognizes that even if the owners of bearer shares are difficult to identify, a categorical prohibition on considering such shares is not necessary to cope with that challenge.

The IRS attempts to explain away these regulations implementing § 884 by focusing on the "impetus" for the restriction of bearer shares in § 883, explaining that "the abusive use of bearer shares to hide ownership constitutes a well-recognized problem in the shipping industry." IRS Br. 43. But that's entirely beside the point. What matters is that the IRS has recognized in the § 884 regulations that bearer shares are *capable* of proving ownership. The presence or absence of a risk of abuse has no effect on the ability of bearer shares to "reliably demonstrat[e]" who owns the share. 68 Fed. Reg. at 51,399. If bearer shares were reliable enough under § 884, we see no reason why they wouldn't have been reliable enough to justify their consideration under § 883. The IRS cannot reasonably rely on the risk of abuse to treat bearer shares as a form of second-class ownership in some contexts but not in others, especially without any contemporaneous explanation justifying the disparate treatment. The IRS's inconsistent approach to bearer shares is the last straw needed to break this camel's back.

\* \* \*

At the end of the day, the IRS here chose to "paint[] with such a broad brush" that it "failed adequately to justify" its

categorical rule excluding the use of bearer shares in qualifying for the tax exemption in § 883. *Goldstein*, 451 F.3d at 883. Even if the IRS reasonably concluded that sometimes—maybe oftentimes—bearer shares are incapable of proving the residence of their owners, the 2003 Regulation's categorical bar on considering bearer shares does not follow from that premise. The IRS has not justified treating *all* bearer shares as incapable of proving ownership. If *some* corporations' bearer shares are not kept in record form, and thus are not capable of proving the location of an owner, then the IRS "should have identified those [corporations' shares] and tailored its rule accordingly." *Id.* The 2003 Regulation is unreasonable and therefore invalid under *Chevron* Step Two.

## IV

For the foregoing reasons, we reverse the Tax Court's order and direct the court to vacate the 2003 Regulation's provisions prohibiting the consideration of bearer shares.

*So ordered.*